IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

JASON HARRIS,                                                                                               PLAINTIFF
REG. #22499-076

v.                                              2:13CV00123-JTK

UNITED STATES OF AMERICA                                                                     DEFENDANT

**MEMORANDUM AND ORDER**

This Court conducted a Bench Trial in this case on February 10, 2015.[1]  Following a presentation of the testimonies of the parties and witnesses, and submission of exhibits, the Court enters the following findings of fact and conclusions of law.

**I.     Introduction**

Plaintiff Jason Harris is a federal inmate incarcerated at the Forrest City Medium Federal Correctional Institution (FCI), who filed this pro se action pursuant to the Federal Tort Claims Act (FTCA), based on the alleged inadequate medical care and treatment for a tendon injury to his left fifth finger. (Doc. No. 2)

According to his Complaint, on November 18, 2010, Plaintiff caught his left little finger in the door of his cell. (Doc. No. 2, p. 3) He was taken to the FCI health facility and treated by a physician's assistant, who sutured his finger to control the bleeding. (Id.)  A few hours later, he was taken to the emergency room of the local hospital, where a physician examined him, diagnosed tendon and nerve damage, and stated that the repair needed to be completed within two weeks to optimize the outcome.  (Id.)  Plaintiff was examined by an orthopedic physician on December 7,

---

[1]Both parties consented to my jurisdiction, pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.

2010, eighteen days after his injury, who diagnosed a tear of the tendon and stated it was likely too late to repair his finger without major surgery. (Id.) Plaintiff claims Defendant's employees acted with gross negligence by failing to transport him to the outside physician within the two-week time period noted in his medical records, and seeks damages for pain and suffering. (Id., pp. 3, 6)

**II.   Findings of Fact**

Jason Harris is an inmate housed at the FCI, Forrest City, and currently is scheduled to be released in 2016. Prior to his incarceration, he worked as a brick mason. On November 18, 2010, at approximately 7:20 a.m., he accidentally slammed his left fourth and fifth fingers in his cell door and reported to the health services unit at 7:31 a.m. (Def. Exh. 2) Harris was treated by a nurse and by Ruth Brouwer, a physician's assistant, who placed sutures in his fingers to control the bleeding. (Id.) He then was transported to the Forrest City Medical Center emergency room, where he was examined by Dr. Stephen Blackburn about 12:01 p.m. (Def. Exh. 4) Dr. Blackburn noted that Plaintiff lacerated his left fifth digit flexor tendon and that he should report to the prison infirmary for a referral to a hand surgeon or orthopaedist. (Id.)

Upon his return to FCI, Ms. Brouwer prepared a consultation request for Harris to be taken to an orthopaedist for tendon repair, noting that "repair need to be done within 2 weeks to optimize outcome." (Def. Exh. 5) The request was categorized as "medically necessary - non-emergent," and approved on November 19, 2010, by Brandy Moore, acting on behalf of the Utilization Review Committee (URC). (Id.) According to Moore, the URC meets once a week to review consultation requests and upon approval, a third party contractor handles the scheduling of appointments. The URC, which consists of an on-site physician, also determines the times frame for appointments and whether or not to designate a condition as emergent.

Harris was examined by an off-site orthopedic physician, Dr. Bret Sokoloff, on December 6, 2010. (Def. Exh. 6) According to his report, Harris suffered from a rupture of the tendon in his left little finger, but was "likely too late for primary tendon repair." (Id.) An x-ray showed his finger was not broken, and Dr. Sokoloff recommended Plaintiff for a MRI to determine the level of the tendon retraction in his finger. (Id.) He further noted that if the tendon was retracted to the palm, as he expected, Harris would need to undergo a two-stage reconstruction by a hand surgeon, which was not recommended because Harris was incarcerated and adequate follow-up therapy was not accessible or possible. (Id.) A final, less urgent, but permanent alternative presented to Plaintiff was to have his joint fused, if his finger proved bothersome. (Id.) In the course of his examination of Harris, Sokoloff noted no numbness, tingling, weakness, stiffness, instability, catching, grinding, popping, swelling fever, or redness. (Id., p. 2)

Upon Harris' return to the FCI, a physician's assistant completed a consultation request that he undergo a MRI, which was approved by the on-site physician on December 8, 2010 (Def. Exh. 7). That test was conducted on February 1, 2011, and concluded a probable crushing or severing of the fifth digit tendons. (Def. Exh. 8) Harris saw Dr. Sokoloff again on March 31, 2011, at which time the doctor noted moderate pain with a grip, and no flexion of the tip of Harris' left little finger. (Def. Exh. 10) Dr. Sokoloff also did not recommend surgery at that point and wrote Harris a prescription for Naproxen. (Id.) Harris saw Dr. Sokoloff one final time on August 3, 2011, with a note that he was improving, experiencing moderate soreness, and that he had reached his maximum functional status with no further active intervention needed. (Def. Exh. 11)

Dr. Jeff Johnson, an orthopaedic hand surgeon and partner of Ozark Orthopaedic Associates in Fayetteville, Arkansas, reviewed Plaintiff's medical records from May, 2010, until August 3,

2011. He explained that Plaintiff lacerated a tendon in the top segment of his left little finger (flexor digitorum profundus), the tendon closest to the nail that allows one to bend the last joint of the finger. He also concluded that the time between Plaintiff's injury and the time he presented to Dr. Sokoloff on December 6, 2010, did not affect the outcome of his care, and did not preclude the repair of Plaintiff's flexor tendon. Although Johnson disagreed with Sokoloff's conclusion that as of December 6, 2010, Plaintiff's finger was not reparable, he admitted that most general orthopaedists are not comfortable or trained to perform advanced primary repair techniques in such a situation, but that Plaintiff's injury was repairable at least by a hand surgeon. In light of such, no damage occurred by allowing eighteen days to pass before Harris saw Dr. Sokoloff.

Johnson further explained that even if Plaintiff's finger was repairable at that point, it would not have been successful, because as an incarcerated individual, he would not have had access to trained therapists. In fact, he stated that repair without therapy could make the finger worse, not better. He also concluded that even though Plaintiff could not pinch with the tip of his little finger, the lack of flexion of that portion of his joint would not prevent him from carrying on with normal activities. Johnson agreed with the options that Sokoloff presented to Plaintiff, but again stressed that any option while Plaintiff remained incarcerated would not be successful. "Oftentimes in hand surgery, it's not simply sewing things back together, but the therapy that makes that thing work again is really what you're shooting for...." (Def. Exh. 13, p. 22)

Harris maintains that because he cannot close the fist of his left hand, it will be difficult to work as a brick mason when he is released from prison, because he uses his left hand to hold and grip bricks. He admitted that he could probably pick up a brick but could not do so adequately.

4

**III.    Conclusions of Law**

An action for medical injury filed pursuant to the FTCA, 28 U.S.C. § 2671, et seq., is prosecuted under the law of the state where the alleged tort occurred, which in this case is Arkansas. Glorvigen v. Cirrus Design Corp., 581 F.3d 737, 743 (8th Cir. 2009). The Arkansas Medical Malpractice Act, ARK. CODE ANN. § 16-114-201, et seq., applies to actions alleging medical negligence due to a medical provider's failure to properly diagnose, assess, and manage care and treatment. "In order to sustain a claim for medical malpractice, one must prove the applicable standard of care, the defendant's breach thereof, and that the defendant's breach proximately caused injury." Jones v. McGraw, 374 Ark. 483, 288 S.W.3d 623, 626 (2008) (citations omitted). While generally, a Plaintiff must use expert testimony to prove his case, this Court previously held that the negligence Harris asserted in his Complaint fell within this Court's comprehension as a matter of common knowledge, and that he was not required to produce an expert opinion. (Doc. Nos. 36-37)

Having reviewed the testimony and exhibits, the Court finds no evidence of negligence by Defendant's employees. Harris does not allege that the accident was the fault of others, and he does not dispute that immediately following the accident he was treated in the FCI health center. In addition, he was transported within hours to the nearest emergency room, where no additional treatment was provided, other than to recommend that he be referred to an orthopaedist or hand surgeon. The consultation request for an orthopaedist was completed on the same day of his injury and approved the next day. At that point, Harris provides no evidence explaining why the appointment was not scheduled in the two-week time frame as noted in his records. While he claims that the extra four-day delay in seeing Dr. Sokoloff was the cause of the doctor's inability to repair his finger, he does not provide any evidence that Defendant's employees were responsible for the

5

delay.  Brandy Moore testified that after she approved the consultation request on November 19, 2010, the matter was forwarded to a third-party contractor for scheduling.  Harris presented no evidence that Moore or the third-party contractor acted with negligence in the scheduling process.

In addition, Dr. Johnson (Defendant's expert) testified, without objection, that although he did not agree with Dr. Sokoloff's conclusion that Plaintiff's finger was not repairable on December 6, 2010, any repair would not have been successful due to Plaintiff's incarceration and the lack of appropriate therapy following surgery.  Although Plaintiff maintains that if he had been seen by Sokoloff within the two-week time frame, his finger would have been repaired, he provides no evidence or testimony to support that claim.  Johnson himself stated that in the free world he generally sees patients who first saw a primary care doctor, then a local orthopaedist, and that definitely the repair is not completed within a two-week time period.

The Court is somewhat concerned that Plaintiff was not taken to an orthopaedic physician within the two-week time frame clearly noted in Plaintiff's records.  However, Plaintiff provided no evidence to show that the delay was caused by any of the Defendant's employees, or that it affected Dr. Sokoloff's diagnosis.  Therefore, absent such evidence, Plaintiff failed to prove by a preponderance of the evidence that Defendant or its employees acted negligently and that those actions were the proximate cause of his injury (failure to repair tendon).

**IV.    Conclusion**

IT IS, THEREFORE, ORDERED that the Defendant have judgment over the Plaintiff on his FTCA claim and Plaintiff's complaint be DISMISSED with prejudice.

An appropriate Judgment shall accompany this Memorandum and Order.

IT IS SO ORDERED this 18th day of February, 2015.

                                                           _____
                                                           JEROME T. KEARNEY
                                                           UNITED STATES MAGISTRATE JUDGE